IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| CHARLENE LOVETT, ) | CIVIL ACTION 4:05-02674-MBS-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | REPORT AND RECOMMENDATION |
| JO ANNE B. BARNHART ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

## I. PROCEDURAL HISTORY

The plaintiff, Charlene Lovett, filed applications for DIB and SSI on October 3, 2001, alleging disability since June 27, 2001. Her applications were denied at all administrative levels, and upon reconsideration, and plaintiff filed a request for a hearing. An initial hearing was held and the ALJ issued an unfavorable decision dated April 25, 2003. (Tr. 37-44). Plaintiff filed a Request for

Review of the hearing decision. On March 12, 2004, the Appeal's Council vacated the prior decision and remanded the case to the ALJ for further development and consideration. (Tr. 74-78).

The ALJ held a second hearing on July 7, 2004. On December 8, 2004, the ALJ again denied plaintiff's claim, finding that she could perform her past relevant work. (Tr.19-27). On July 29, 2005, the Appeals Council denied plaintiff's request for review, and the ALJ's decision became the Commissioner's "final decision" under 42 U.S.C. § 405(g). (Tr. 8-12).

## II. FACTUAL BACKGROUND

The plaintiff was born July 20, 1975, and was 29 years old at the time of the hearing. Plaintiff has a GED and past work experience as a cashier and restaurant server. Plaintiff alleges disability due to low back pain and left extremity numbness.

## III. DISABILITY ANALYSIS

The plaintiff's argument consists of the following:

(1) The ALJ failed to perform an analysis of the plaintiff's ability to perform her past relevant work that complies with the requirements of SSR 82-62m 20 C.F.R. § 404.1520 and Fourth Circuit precedent.

(2) The ALJ failed to perform a function-by-function assessment in making the RFC determination.

(3) The ALJ failed to correctly assess the plaintiff's credibility.

(Plaintiff's brief).

In the decision of December 8, 2004, the ALJ found the following:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act

2

                and is insured for benefits through the date of this decision.

2.     The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.     The claimant's spinal stenosis of the lumbar spine with radiculopathy is considered to be "severe" based upon the requirements in the Regulations 20 CFR §§ 104.1520(c) and 416.920(b).

4.     This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.     The undersigned finds that the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6.     The claimant has the residual functional capacity to perform light work with a sit-stand option with the need to sit for 30 minutes, stand for 30 minutes, and change positions, as well as the need to use a cane for balancing and stability.

7.     The claimant's past relevant work as a cashier did not require the performance of work-related activities precluded by her residual functional capacity. (20 CFR § 404.1565 and 416.965).

8.     The claimant's medically determinable spinal stenosis of the lumbar spine with radiculopathy does not prevent the claimant from performing her past relevant work.

9.     The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1520(F) and 416.920(F)).

(Tr. 26).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence[1] and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a (1988). An ALJ must consider (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an

---

[1] Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

4

impairment which prevents past relevant work and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a). Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if she can return to her past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing her inability to work within the meaning of the Social Security Act. 42 U.S.C. § 423 (d)(5). She must make a prima facie showing of disability by showing she was unable to return to her past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to her past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can

perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. Id. at 191.

## IV.  MEDICAL REPORTS

The medical evidence as set forth by the plaintiff in her brief as not been seriously disputed by the defendant. Therefore, the medical evidence as set forth by the plaintiff will be repeated herein.

On June 5, 2001, Dr. A. Joseph Borelli, Jr. performed an MRI on the plaintiff. His report noted the following: L4-L5 mild central stenosis and annular bulging; L3-L4 borderline mild central stenosis and a small right paracentral disc protrusion, the latter without neural compression; L2-L3 small right paracentral disc protrusion, without associated neural compression; L5-S1 annular bulging; degenerative desiccation of the L2-L3 through L5-S1 intervertebral discs, with associated discogenic marrow changes within the L3 and L4 vertebral bodies. The latter findings associated with back pain. Tr.167.

On September 25, 2001, Dr. Michael Kaup treated the plaintiff in the emergency room at the Hilton Head Medical Center. She sought treatment at that facility for complaints of back pain. Dr. Kaup performed a physical examination on the plaintiff and diagnosed her with sciatica. He treated her by using Demerol and Phenergan intramuscularly and noted that she was improved at discharge. Tr. 168-171.

Dr. Eugene A. Eline, Jr. of Orthopaedic and Spine Institute of the Lowcountry provided medical records on the plaintiff for the period beginning June 12, 2001 through May 7, 2002. These records include notes of office visits as well as operative reports of lumbar steroid injections performed on the plaintiff to diagnosis and treat degenerative disc disease. Over the course of

treatment, Dr. Eline used prescription medication including muscle relaxants and pain medicine as well as epidural injections in addressing the plaintiff's condition. On December 10, 2001, Dr. Eline referred the plaintiff to pain management. He saw the plaintiff again on two-follow up visits but continued to state that the plaintiff was not a candidate for surgery and he felt that she needed to be in chronic pain management. His notes indicate he felt no medical treatment that could be offered to improve her condition but rather the focus should be on trying to alleviate her pain. Tr. 184-197.

While treating the plaintiff, Dr. Eline referred her to Beaufort Memorial Hospital for an MRI, lumbar surgical myelogram and lumbar spine CT. The MRI was performed on February 26, 2002 and revealed the following: multilevel disc degeneration L2-3 through L5-S1 levels; disc bulging with predominant right sided paramedian disc protrusions at the L2-3, L3-4, and central disc bulging at L4-5 levels; clinical left lumbar radiculopathy. Tr. 202-203.

On March 4, 2002, the surgical lumbar myelogram was performed on the plaintiff that revealed the following: eccentric epidural defect on the right at L2-L3, possibly a disc herniation and annular bulges at L3-4 and L4-5. Also performed at that time was a lumbar spine CT that revealed the following: findings consistent with the right-sided paramedian disk herniation at L2-3 and acquired spinal stenosis at L3-4 and L4-5. Tr. 204-205.

In addition to the above-mentioned records, on December 1, 2001, Dr. Eline provided a Physician's Statement on the plaintiff to South Carolina Department of Social Services. Dr. Eline stated that the plaintiff was unable to engage in any type of employment because she was unable to stand, bend, twist, or lift more than five or ten pounds. He indicated that the plaintiff would never be able to work and further noted that she was also unable to engage in education, training, or job preparation activities. Dr. Eline noted that the plaintiff had the following restrictions and limitations:

no bending or twisting; inability to lift more than five pounds frequently; can't stand for longer than one hour and can not sit for greater than one hour. He diagnosed the plaintiff with multi-level lumbar disc degeneration L2-3 through L5-S1; disk bulging with predominate right side paracentral protrusions at the L2-L3, L3-L4 levels with central disc bulging at the L4-L5 levels. Dr. Eline indicated that the plaintiff's condition had been unresponsive to conservative care and as she was a non-surgical candidate, he had referred her to pain management. His prognosis was that her condition was permanent and total. Tr. 172-173.

Dr. John T. Mahan examined the plaintiff and reviewed her MRI on December 26, 2001. Upon physical examination, he found that the plaintiff had quite a bit of pain in her lumbar spine with any motion. His impression was that the plaintiff had degenerative disk disease and deconditioning of the lumbar spine. Dr. Mahan felt that the best course of treatment for the plaintiff would be to continue the physical therapy ordered by Dr. Eline and he agreed that she was not a surgical candidate. Tr. 182.

Dr. Steven C. Poletti saw the plaintiff on February 5, 2002 for her complaints of numbness in her left leg. He stated that the plaintiff had left leg numbness of indeterminate etiology that radiated into her buttocks and calf. He further stated that the plaintiff walked with a limp. Dr. Poletti diagnosed her with multi-level degenerative disc disease with left leg pain. He commented that he did not feel that her leg pain was spinal in its basis. He agreed that she was not a candidate for surgery and recommended pain management. Tr. 183.

Dr. Karen Mr. Eller of Beaufort Memorial Hospital Pain Management Center provided medical records on the plaintiff for the period beginning May 23, 2002, through January 15, 2003. These records include notes of office visits as well as operative reports of lumbar steroid injections

performed on the plaintiff for the purpose of pain management. Over the course of treatment, Dr. Eller used prescription pain medicine, muscle relaxants, selective nerve root blocks, facet injections as well as epidural injections in addressing the plaintiff's condition. Tr. 206-239.

Dr. Randolph C. Bishop provided medical records on the plaintiff regarding two office visits that occurred on April 19, 2004, and April 26, 2004, respectively as well as an MRI report. Dr. Bishop initially saw the plaintiff on April 19, 2004, upon request of Dr. David Vormohr for neurosurgical evaluation of left lumbar radiculitis. He noted that the plaintiff had lumbar spondylosis with radiculitis in seemingly an L2 distribution and ordered an MRI be performed as her symptoms had changed. Tr. 247-248. Dr. Bishop saw the plaintiff again on April 26, 2004 following the MRI and noted that the MRI revealed she had some diffuse spondylitic disease with moderate stenosis from L3 to SI. He stated that there was no evidence of neural compression to explain her leg numbness. As such, he further questioned the plaintiff and she indicated that there was more paresthesias and feelings of heaviness in the legs than pain. Dr. Bishop informed the plaintiff to follow-up with her therapist and indicated that he felt he did not have a lot to offer her but would re-check her in a month's time. Tr. 245-246.

Dr. Charles Nivens provided medical records on the plaintiff for the period beginning September 22, 2003, through May 27, 2004. Dr. Nivens initially saw the plaintiff on September 22, 2003, for low back pain and occasional left lower extremity pain. He placed her on Oxycontin and ordered an MRI of the lumbar spine as well as EMG of the left lower extremity in order to better assess her condition. Tr. 275-276. The MRI was performed on September 25, 2003, and revealed the following: "Spinal Stenosis due to facet arthritic changes most marked at the L2-3 level narrowing the canal to about 9MM resulting in bilateral foraminal stenosis to a mild degree. There is also mild

foraminal stenosis at L3-4 and L4-5 but no focal encroachment on the existing nerve roots is present." Tr. 274. In addition to the Oxycontin, Dr. Nivens began treating the plaintiff for pain using epidural steroid injections. Tr.249-258; 262-273. On January 26, 2004, the EMG study was performed which revealed the following: mild sensory neuropathy as well as motor nerve neuropathy. Tr. 259-261.

On December 3, 2001, a non-examining state agency physician reviewed the evidence on file and completed a physical residual functional capacity assessment. The following exertional limitations were noted in that assessment: occasionally lift/carry fifty pounds; frequently lift/carry twenty-five pounds; stand/walk about six hours in an eight-hour workday; sit (with normal breaks) about six hours in an eight-hour workday; push and/or pull unlimited. The postural limitations of occasionally stooping and crouching were also listed. Tr. 174-181.

## V. ARGUMENTS

First, plaintiff argues the ALJ failed to perform an analysis of the plaintiff's ability to perform her past relevant work that complies with the requirements of SSR 82-62, 20 C.F.R. 404.1520 and Fourth Circuit precedent. Plaintiff asserts the ALJ indicated in his decision that his conclusion that plaintiff could return to her past work was based on the testimony of the VE.

In the hearing decision, plaintiff asserts the transcript of the supplemental hearing fails to show that the vocational expert was asked "any questions regarding the consistency of the vocational testimony with the DOT, or that the VE provided any opinion that his opinion was consistent, or any opinion relating to his knowledge of jobs available with a sit-stand option." (Plaintiff's brief p. 14).

Specifically, plaintiff argues the ALJ's decision fails to resolve the issue of plaintiff's ability to return to her past relevant work. Plaintiff states that the only indication given as to what the requirements of the past work was is the reference to the DOT description of the past work as provided in the hearing decision. Plaintiff argues the DOT description indicates the past work was light, which the plaintiff could not perform by definition given the RFC of the ALJ, which found the plaintiff only able to alternate standing and sitting at 30 minute intervals.    Further, plaintiff argues that "other than the citation to the DOT description of the light occupation in the hearing decision, there is no effort to categorize the requirements of the past work, or to explain how the plaintiff would be able to continue performing the work with a sit-stand option and the need for a cane." Plaintiff also argues that ". . . as the ALJ conceded in the hearing decision, the vocational expert must explain any conflicts with his testimony and the DOT, and despite the ALJ's statements to the contrary in the hearing decision, the vocational expert did not provide such an explanation." (Plaintiff's brief p. 19).  Additionally, plaintiff points out that in the hypothetical, the ALJ finds the plaintiff would only require the use of a cane while walking. However, in the hearing decision the ALJ indicates the plaintiff needs a cane for balance and stability, without specifying the need for a cane is only when walking. Plaintiff argues this is critical to the case in that the need for a cane while standing would essentially eliminate the plaintiff's ability to use one of her upper extremities half of the day, given the sit-stand option that is also part of the plaintiff's functional capacity. "This would almost certainly eliminate the plaintiff's ability to perform the vast majority of both sedentary and light unskilled occupations, as the ability to have good use of both upper extremities is essential in these types of occupations." (Plaintiff's brief).

The undersigned concurs with plaintiff's argument. In fact, upon the remand, the Appeals Council instructed the ALJ to do the following;

> Obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base . . . the hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy . . . Further, before relying on the vocational expert evidence, the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations.

(Tr. 77).

A review of the hearing decision reveals the ALJ stated the following:

> At the hearing, the vocational expert testified that given the claimant's residual functional capacity as set forth above, she could return to her past relevant work as a cashier. **The undersigned specifically asked the vocational expert, pursuant to the requirements set forth in Social Security Ruling 00-4p, whether the opinions expressed were consistent with the occupational information provided in the Dictionary of Occupational Titles (DOT). The vocational expert answered in the affirmative, noting that although the DOT did not address the sit-stand option, he had personally observed the job involving the sit-stand option.** As such, the undersigned concurs with and accepts the vocational expert's testimony.

(Tr. 25).

However, a review of the transcript from the hearing shows otherwise. The ALJ did not ask the VE whether the opinions expressed were consistent with the DOT. Further, there is an inconsistency in relation to the use of the cane. In the hearing decision, the ALJ concludes plaintiff would "need to use a cane for balancing and stability" (Tr. 24). However, in the hypothetical to the

VE that the ALJ relied, the ALJ stated plaintiff would need a cane while walking, or performing tasks that would require walking, would need the assistance of a cane for purposes of balance and stability. These different conclusions could significantly affect the VE's testimony.

In summary, the ALJ failed to comply with the Appeals Council's remand order as set out above. Accordingly, the undersigned concludes that due to the ALJ's failure to comply with the remand order of the Appeals Council, there is not "substantial evidence" to uphold the final decision of the Secretary. See Brown v. Bowen, 682 F. Supp. 858 (W.D. Va. 1988). The court will not speculate on a barren record devoid of the appropriate administrative analysis. Therefore, it is recommended that this case be remanded back to resolve any conflicts between the occupational evidence from the VE and the DOT, to resolve the inconsistencies of when and why the plaintiff would need to use a cane, and perform an analysis of the plaintiff's ability to perform her past work. Further, a proper analysis of plaintiff's ability to return to her past relevant work should be conducted to include the specific mental and physical requirements of the past work activity and compare this to the plaintiff's RFC along with a proper function-by-function assessment of the plaintiff's functional capacity pursuant to SSR 96-8p.

## **VI CONCLUSION**

Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631 (c) (3) of the Social Security Act, 42 U.S.C. Sections 405 (g) and 1338 (c) (3), it is,

RECOMMENDED that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be **remanded** to the Commissioner for further administrative action as set out above.

                                          Respectfully submitted,

                                          s/Thomas E. Rogers, III
                                          Thomas E. Rogers, III
                                          United States Magistrate Judge

February 14, 2007
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**